Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have two appeals to rehear en banc this morning. After we hear the first appeal, we'll need to reconstitute the court to allow for a couple of other judges to join us. That shouldn't take too long. Counsel, we're familiar with your cases. We've read your briefs, the authorities cited in your briefs, and at least portions of the record. So you should feel free to get straight to the heart of your argument. Because of kind of the unwieldy nature of an en banc Zoom rehearing, we're going to follow the custom that we have followed in earlier en banc hearings, which is that after counsel has a couple of minutes of introductory remarks, we'll have questions from judges, to the extent the judges have questions, in descending order of seniority. So we hope to, well, we're going to allow every judge to at least have an opportunity to ask a to a question from the court. You should feel free to finish that answer, even if the time has expired. But if the time hasn't expired, be mindful of the clock and be mindful of our time. Our first case this morning is United States v. Brown. Mr. Clement, will you speak with us, Paul Clement, for the appellant? The district court committed clear legal error in dismissing a juror who insisted he was following instructions and deliberating because he not only sought divine guidance about the law and the facts, but sincerely believed he received it. The standard for dismissing a juror who purports to be willing and able to follow the court's instructions is appropriately tough. After all, a district court must respect jury secrecy and at the same time must guard against dismissing a juror who is simply unconvinced by the government's case. Thus, if there is any substantial possibility that the juror is simply unconvinced by the government's evidence, the court must err on the side of retaining the juror and protecting the defendant's Sixth Amendment right. Here, there's more than just a substantial possibility that juror 13 was simply unproven by the government. Indeed, when a juror says he is following the court's instructions and is deliberating, but he has prayed over the matter and believes that the defendant is not guilty, there is more than a substantial possibility that the juror is telling the truth, especially when the only other juror to testify confirmed that juror 13 was in fact deliberating. The district court ruled otherwise only because juror 13 said that he not only prayed over the matter, but he put the terms of receiving divine guidance in terms of being directed by the Holy Spirit. It is that latter expression that the district court deemed a disqualifying statement and a bridge too far. Excluding juror 13 on that basis is wrong under the Sixth Amendment and dangerous under the First Amendment. And maybe the easiest way to illustrate the problem is if you think about transplanting this concept from mid-deliberations to the ex-ante process of jury selection. It works perfectly well, as it has for centuries, to confirm in the voir dire that a juror is willing to apply the law and doesn't have any religious views that would prevent them from imposing the full range of penalties. Well, can you give us an example of what a good illustration where a court has upheld, or no, has reversed the removal of a juror that shows how the standard of review works in your favor here? Well, I mean, I think I would probably direct the court to go back to the original Brown decision from the D.C. Circuit or the Thomas decision from the Second Circuit. Those are both cases where there was a reversal of a decision by the district court judge to take a juror off of the case mid-deliberations. And in both cases, now in fairness, those were where the court was in the process of articulating the correct standard. But I think in both cases, they were borderline cases. There was reason to be concerned. The district court sort of didn't sort of act irrationally. The district court heard a juror who maybe said they were engaged in nullification, maybe said they were not willing to really accept what the law provided in a particular context. And in those cases, the Court of Appeals said that's not good Judge Wilson. Good morning, Mr. Clement. We have a transcript of the plea colloquy that took place between the judge and juror number 13. Of course, you know, we have to take a look at a cold record. We cannot see whether the juror was sweating or maintaining eye contact or nodding his head or whatever. And so when we look at this transcript, we see that juror number 13 made some statements that you could attribute to he's not following the court's instructions. And he made other statements that you can interpret as he is following the court's instructions. I guess my question is, is the judge entitled to make a credibility evaluation? Was the judge just bound by those statements that the juror number 13 made that he was following the court's instructions? I mean, are we free to question a credibility determination made by the judge in a circumstance like this? Well, Your Honor, let me let me say this. I think you are entitled to or reverse the district court's determination in a case like this. But that's in part because I don't think this was a pure credibility determination. I mean, keep in mind that part of that colloquy, the district court judge said that he found the juror 13 to be sincere, that he found him to be, you know, in many respects, earnest. So I don't think this is a case. He felt sincere about his religious beliefs. He didn't say district judge here didn't say I find him to be sincere. It is it is the ability to follow the court's instructions. Well, Your Honor, he came pretty close. He said that, in fact, you know, I believe that this juror actually thinks that he's following my instructions. And I really think if you read that colloquy, the following becomes clear. This isn't a situation where there was really a live dispute about whether juror 13 was really deliberating or really following the instructions. I think the district court judge made quite clear that he didn't need to hear, for example, from any other jurors about what was going on there because he'd heard enough. When he heard juror 13 say I took direction from the Holy Spirit, that was it. The district court judge said that was a and I'm quoting now disqualifying statement. And we believe that's simply wrong as a matter of law. And that's partly in fact the proceedings below. Judge Martin. Good morning, Mr. Clement. Your brief, as I understood it, couches your argument in terms of the harms in removing a juror that's inclined to acquit. But, I mean, are you suggesting that we would have a different rule for a juror that was inclined to convict based on communications from the Holy Spirit? So, Judge Martin, I don't know that the standard would be any different at the end of the day. I suppose, you know, whether it was the defendant or the government that was up here making my argument might be different. But I do think it's worth keeping in mind that the government doesn't have any Sixth Amendment rights. I mean, only the defendant has a Sixth Amendment right. So these issues are, I think, most poignant when you have a sort of preliminary indication that they're inclined to acquit. But, you know, we have to make one rule for both cases. And so what would that rule be? Well, I think the rule would be the sort of no substantial basis rule. And I think that rule, in a sense, you're right, Judge Martin, you have to have a rule for both sets of cases. But I think you need to have the Sixth Amendment rights. And I think the no substantial ability test does that. Judge Jordan. Good morning, Mr. Clement. Morning. So follow up on Judge Martin's question. In your view, would the results be the same if Juror 13 had said that Satan told him that Corrine Brown was guilty on all charges? So, Your Honor, I think the analysis would be the same. I think you'd want to make sure that it was a determination that I mean, you know, if the person said everything, everything, everything in the hypothetical, everything in the case remains the same, except that the juror says, I asked for guidance from Satan. And Satan told me that Corrine Brown was guilty on all charges. What's the result? I think it's the same result, Your Honor. And I think you need to have the same result in order to uphold the First Amendment value. And, you know, people put Satan aside to one second. People pray in different ways. People understand they received answers to their prayers in different ways. And I think part of the problem here is to treat a direction from the Holy Spirit as a bridge too far. At the same point, you may take somebody who just prays in silence and thinks that they've received the answer through intuition or a small voice within differently. I think it's processing. Judge Rosenbaum, you're muted. Thank you. Good morning, Mr. Clement. I have a few questions. First, I want to follow up a little bit on Judge Martin and Judge Jordan's line of questioning. And before, actually, before we do that, let me just ask you, would you agree that the First Amendment, any First Amendment issues have to be considered for plain error because they were not raised in the district court? No, I wouldn't agree with that, Your Honor. The way I would think about this is the Sixth Amendment issues have been fully preserved. And as part of the Sixth Amendment argument, the fact that the judge's reason for violating my client's Sixth Amendment rights also happens to implicate the First Amendment. I think that's fully preserved. That's just another argument on behalf of a claim we've made throughout the case. Counsel, where in the record can we find in the district court where Brown argued the First Amendment? Well, I'd have to go back and check, Your Honor. But my point is, it doesn't depend on whether I can find the words First Amendment in the record below, because this is just a different argument in support of the basic claim. I mean, if you go to the city of Escondido, right, you don't need to make every argument in support of your basic claim. And there's no question here that, I'm sorry. I'm sorry. In that case, then let me ask you, getting back to Judge Martin and Judge Jordan's questions, would you agree then that since there's got to be one standard, and well, first let me ask you, you agree that in the scenario that Judge Jordan asked you about, if the district judge then found that the juror was not capable of making a decision based on the evidence, the district judge still would have to keep that juror on the jury in light of the rule that you're suggesting? Well, Your Honor, I think that's when, as I suggested, I think if everything were the same as this case, yes. But if it turned out... Well, but that's the hypothetical. Okay. So that being the case, let me then ask you this. Would that then mean, well, is it consistent with the defendant's Sixth Amendment right to a jury trial for a juror who has indicated his intention to convict, not based on the evidence, regardless of the reason, but not based on the evidence, to be allowed to render a verdict? Well, with all due respect, that's a quite different question. I mean, the answer to that is no. But if we're going to take this case as the basis for the hypothetical, you have somebody who said they prayed over the evidence and the instructions in this case. True. And then with divine assistance, they've been provided an answer. But the reason that we have the district judge there is to make determinations of credibility and to base them on things that we can't see. Isn't that true? That is true. But the cold record here tells us exactly what the district court viewed as the disqualifying statement. And I think it's open to this court, if it thinks that's not a disqualifying statement, to reverse on that basis. I do want to give all judges an opportunity and we could have a follow up if we need it. Judge Newsome. Good morning, Mr. Clement. The question I have, I guess, is this. It seems to me the strength of your case, given the no substantial possibility standard, is what I'll call all of the mitigating evidence that cuts against this one radioactive statement that the Holy Spirit told me that Corrine Brown was not guilty on all charges. What if, just to test the limits of the principle, what if that was sort of all we had on the record? What if it was just that one radioactive statement and we didn't have the remaining, what I'll call kind of mitigating evidence? So I think, Your Honor, I would probably take issue with just how radioactive that statement is. And I would I would say our position would certainly be that you couldn't disqualify a guidance the way it's framed. It's that he received a directive as to the result in the case at the outset of deliberation. So even in that circumstance, with no other sort of what I'm calling mitigating evidence, that it would still be clear error to dismiss that jury. Or I'm sorry, that we would that it would still be the same result. Absolutely, Your Honor. And I guess the principle of law, I would suggest governance there is it cannot be the law that it is perfectly OK to seek guidance about the awesome responsibility of judging one of your fellow citizens, but it becomes per se dismissal if you think you've received it. And I think that statement alone just indicates that the juror thinks he's received divine guidance. To Mr. Clement, taking Judge Newsom's question and sort of jumping off from there, if we do agree with you, how do we avoid crafting a rule that all it takes for a juror to say is, no, no, I'm going to keep deliberating. I'm going to follow the judge's instruction and keep deliberating, but then not do so. Or how do we how do we avoid the situation where just those magic words insulate the juror from removal if, in fact, the juror is not doing so? Certainly, Your Honor, I think a decision that reversed but emphasize that it is perfectly appropriate to for a judge to police real concerns that a juror is, in fact, not deliberating, I think would probably do the trick. But I do think it's very important here to underscore that the judge here only heard from two jurors, Juror 13 and Juror 8, and both of them said that Juror 13 was, in fact, deliberating. So we're pretty far away from the concern, which I certainly would admit is a legitimate concern. Judge Grant? You're unmuted, Judge Grant. Thank you. Someone was going to do it. A follow-up to that question, your brief seems to suggest that it's a problem that we only heard from jurors who had complained. Would you be inviting district courts to start asking more questions in these situations and risk potentially invading the deliberative process in a way that we've disfavored? So, Your Honor, it's an excellent question, and it underscores, I think, why the standard is so tough and why this inquiry is fraught with difficulty, because a district court judge starts talking to jurors kind of at his or her peril. But I do think it is telling that in many of the cases where a juror has been disqualified based on some question about a juror not deliberating, the judge has, in fact, heard from essentially every other juror that this juror is a problem. And, you know, as much as I hate to say that the judge should talk to every juror, I do think taking a jury, a juror off in circumstances like this when the Supreme Court has just reaffirmed how important a unanimous jury is, I think something like that is important before you take that extraordinary step. Judge Love? Abel requires that there be a clear... Abel treats the substantial possibility finding, which you've discussed throughout, as a finding of fact that is then reviewed by us for clear error. And there hasn't been any focus so far on the clear error standard. I guess my question to you is, it's sort of two-part. One is the clear error standard seems to be far less deferential or far less heightened than the substantial possibility standard that the district court has to apply. And given that, should we, given that we are in an en banc situation, revisit Abel and do more what the D.C. Circuit did in Brown and essentially do a de novo review and ourselves apply the substantial possibility standard, given the competing constitutional interests that you started discussing when you opened? Thank you, Your Honor. I mean, that is an excellent question because there is something anomalous about having a standard as demanding as the no substantial possibility test and then treating the conclusion as a pure matter of fact reviewed only for clear error. You know, I think you could bypass that question if you wanted here because I think it's clear here that the district court committed legal error. But if you want my candid assessment, I do think it is problematic. Abel is problematic. I think at a minimum, it might be sensible to treat the ultimate conclusion as a mixed question of law and fact that should be reviewed for abuse of discretion. That might kind of be my sense of how to sort of come at it. But it is there is something anomalous about having such a demanding standard, but then almost no review of it under clear error. I don't have any questions at this time. Thank you, Judge Brasher. Yeah. So it seemed like the district court tried to draw a line between people who believe in divine revelation generally, which would be okay. You know, someone who prays generally, which would be okay. And people who pray and have received an answer, which the district court suggested would be unokay, would be not right. What do you say about that line generally? Is that supportable? Does that make any sense? No, Your Honor. I think that line walked the district court judge who I think, you know, is trying his level best to deal with the difficult situation. But I think that walked him right into a Larson against Valenti problem. I mean, because, you know, the differences between how people perceive kind of divine revelation, if you will, is something that I think differs based on denominational views and many other things. And I just don't think you can draw that line. And the idea of policing that, again, I mentioned earlier, but if you think about trying to transport that into the voir dire process and the kind of questions that would logically be permissible, if this is a valid basis for striking a juror mid deliberations, I don't think the courts would want to go there. Does anyone else have a question before we allow Mr Clement a second to wrap up? Okay, Mr Clement, 30 seconds, and we're gonna make sure Mr Rhodes is treated fairly. Um, certainly, Your Honor, I would just I would just wrap up very quickly by saying, you know, juror 13 prayed for guidance. He thought he had an answer. I think if the juror had thought the answer came from his gut or from his intuition or from what Mahatma Gandhi called his still small voice within, I don't think we'd be here. And I don't think that the rule can be any different because you're 13 thought the answer came from the Holy Spirit. Thank you, Your Honors. All right. Thank you. You've saved some time for rebuttal on Mr Rhodes. Thank you, Your Honor. May it please the court. The district court applied the correct legal standard here. It didn't clearly air in its factual findings, and it didn't abuse its discretion in removing juror 13. This is in some ways an unusual case, obviously, but in the end, what it boils down to is whether the district court did what it is supposed to do, and it did what it is supposed to do here. Fact findings like this district courts make all the time, just like juries make these fact findings. It's their role institutionally. They have experience in that arena, and they have the ability to see and hear the witnesses. Like Judge Wilson said, we don't know from looking at a cold record whether juror 13 was pausing before answer, whether he was looking at the judge when he was answering, whether he was gesturing, fiddling. None of that can we tell from the record, and that's why the standard is set up to lead that to the district court. It's their responsibility to oversee the conduct of the trial, and that responsibility doesn't end if the case involves religion, if a juror invokes religion, and it evidence and the law. The district court did not remove juror 13 because he sought religious guidance. He did not question jurors' ability to rely on their religious faith. He repeatedly said that, and to suggest, I think, that the judge was just throwing out there the idea that a juror can seek guidance but isn't allowed to hear anything in return is doing a disservice to what the district court did here. The district court was talking about what specifically happened here, and what specifically happened here was a juror making a pronouncement right at the beginning of deliberation announcing that the defendant was guilty on all of the counts against her. All right, so I want to understand what you would tell us about how this standard of review works, and particularly, I mean, you've referred to Thomas and Brown and the decisions from other circuits as out-of-circuit precedents, and I want to know, do you think that Thomas, for example, was rightly decided when the Second Circuit said, Judge Cabrana said, we're required to vacate these judgments because the court dismissed juror number five largely on the ground that the juror was acting in purposeful disregard of the court's instructions on the law. When the record evidence raises a possibility that the juror was simply unpersuaded by the government's case against the defendant, do you think that that's right, that that's the way this standard works, or do you think the Second Circuit's wrong and we shouldn't follow that aspect of it? Your Honor, I'm not questioning the ultimate decision in that case because there you had several jurors and even the juror, the questionable juror, who there was a lot of discussion about whether he believed the evidence had supported the defendant's guilt in that case. But there were problematic statements too. There were problematic statements too, there's no question about it, but several other jurors also agreed with him there that his issue was with the sufficiency of the evidence. So I could see how a court of appeals at that point would look at it that way. I do think, however, that if the standard is any possibility and the court of appeals is doing it that way, there's a serious problem with doing it that way. So I understand that we have a lot of competing interest in this area here, but I do think that standard is going to result in the district court's inability to make fact findings and control the jury trial before. Judge Wilson? I have no questions. Judge Martin? Good morning. It seemed to me in the reply brief for Ms. Brown, they said it as clearly as they're saying it this morning that Judge Corrigan committed legal error subject to reversal, not a fact finding subject to deference. I'm just curious, I mean, are you aware of any other area of the law in which credibility determinations by the trial judge become legal error? No, I don't, Your Honor. And if I could just expand on that for a moment, because there was a question before about whether there was a First Amendment violation here. I don't think you brought it up. I think Judge Rosenbaum brought it up. But I wanted to at least make clear that in the district court, the defendant agreed that there was no First Amendment violation. This was presented solely as a Sixth Amendment violation by removal of that jury. And we view this as a finding of fact by the district court that's in accord with this court's current view of the standard for evaluating these. Judge Jordan? I don't have any questions. Thank you. Judge Rosenbaum? Mr. Rhodes, would you agree that if a jury renders a verdict that it does not, based on the evidence, it violates the fundamental integrity of all that is embraced in the constitutional concept of trial by jury, as the Supreme Court suggested in Turner v. State of Louisiana? That's exactly right, Your Honor. And that's where the district court ended up here. It found that that's not what this juror was basing his decision on, the evidence in the law before the court. And it wasn't just based on that so-called radioactive statement. It was based on the timing of it, the breadth of it, the response of that from Juror 8, which brought it to the court's attention. Do you have any other questions, Judge Rosenbaum? That's all for now. Thank you. All right. Judge Newsom? Good morning, Mr. Rhodes. I'm going to see if I can sneak in two relatively quick ones here. First, I just want to ask you about a statement in your brief. At page 31 of your brief, you say, certainly Juror 13 answered the district court in some ways that could support the idea that he was relying on the evidence. Why, given the no substantial possibility standard, is that not the end of the case? Because the district court did not find that to be so. The district court didn't accept Juror 13's statement as accurate in the end. I'm saying, if you look at those words, that if the district court here had found, I was concerned about his initial statement, and I understand that Juror 8 brought it to the court's attention, but once I heard from him, I realized that that was sort of an overstatement, and he actually was deciding it based on the evidence, that would have been the end of it. He would have remained on the jury, but that's not how the district court analyzed that. If the district court had found that, it would have certainly supported, and if the district court had said that and nonetheless removed him, we would be in a different position here. Okay, quick question number two. Is it your position that in a case like this, where there is, I'll stick with the phraseology, the one radioactive statement, that there's no surviving that? That is just sort of a per se rule. Once you say something like that, all bets are off, no matter how much mitigating evidence there is on the record, that you simply can't survive saying something like that. There's no taking it back, it's over. That's what the district court seemed to have said. That was a disqualifying statement, and that was sort of the end of it. Well, Your Honor, he said that was a disqualifying statement, but you have to look at it in the entire context in which it occurred. He still listened to Juror 13. In fact, he had said after he knew about that statement, he told defense counsel, well, I have an open mind, I want to then defense counsel ask the court not to inquire of the other jurors, other than obviously the court had already talked to Juror number eight. So I don't think it is in and of itself disqualifying, and I don't think that's what the district court was doing there. The district court was looking at everything. Judge Branch? Yes, Mr. Rhodes. In your brief, in your summary of the argument, you spend a bit of time paying attention to the timing of this juror statement. You mentioned that it's at the outset of deliberations, the jury was just beginning, that Juror 13 received his directive from the Holy Spirit before deliberations began. He announced that edict at the deliberations outset before and without any discussions with his fellow jurors. How significant to you in this case is the timing of when the juror made this statement, and is that somehow going to affect our decision? Your Honor, the timing is very significant. I'm not convinced it's the most significant thing, but more importantly, it was very significant to the district court because in the end, when the court denied the new trial motion, it said he'd expressed a conclusion from the beginning of deliberations and without discussion with his fellow jurors in violation of the court's instructions. That's what the district court ended up finding, because this is a statement that especially the way in which he presented it, number one, was telling the other had begun. And the fact that the next day when Juror 8 sent the letter or prepared the letter for the court in which he said, we have asked him to make his decision based on the evidence, based on the testimony, and based on the laws of the U.S. Court, that further shows that they were been deciding the case on the basis that the court had directed. Judge, go ahead. Thank you. I think one of the most difficult things about this case in this area of law are the interlocking standards that we've talked about. You've got the substantial possibility or beyond a reasonable doubt standard below, and then abusive discretion here. In other areas of 404B, there's often a range of decisions by the district court that we'll find acceptable, even if it's not what we would have done. Do you think that there's a possibility for a range of acceptable answers under the beyond a reasonable doubt standard? Or since that is more of a legal standard, do you think there's either an answer one way or the other? I don't, Your Honor, think there's always an answer one way or another. And you could analogize to when juries are making decisions, obviously beyond a reasonable doubt, and they're told what that standard means and they have to make a decision. And then if that goes up on appeal, and I understand we're in an odd situation because that's reviewed de novo, but in any event, this court can look at a situation like that and say, well, if they viewed this evidence that way, that would be a reasonable construction of the evidence. Or there's this other reasonable hypothesis, which would lead someone to find innocence here or not guilty, I should say. And this court accepts the fact finder's ability to choose among them. And so even though here we're dealing with a beyond a reasonable doubt standard, at least there, it still is looked at through the prism of what the district court, the fact finder, finds here. And this fact finder found that juror number 13 was not deciding the case on the basis of the law. I want to ask about the interlocking standards of review as well. So as I understand it, at least with regard to the main fact finding here, we review it for whether we have a definite and firm conviction that the district court did not make a mistake in finding no reasonable possibility. Is that a fair statement of what we need to do? That's the clear error standard, correct. So here's the record as I understand it, that we have, among other facts. At the beginning, juror number 13, along with the other jurors, specifically swore that he could render a verdict based on the law, evidence, and instructions, and that he had no religious beliefs that would before the judge. Juror number 8 testifies that juror number 13 is deliberating and not obstructing the others from deliberating. Juror number 13 testifies that, quote, he's following and listening to what has been presented and making a determination from that as I think and believe. Juror number 13 says that he's prayed about this, he's looked at the information, and I received information as to what I was told in the relationship, as to what I heard here this is going by the testimonies of the people give here, which I believe that's what we're supposed to do, and then render a decision on those testimonies and the evidence presented in the room. And he again reiterates that he has no problem following the law and the instructions. Given that evidence, how can one not conclude with a definite and confirmed conviction that the district court was not mistaken, that there's at least a reasonable possibility that he was basing his evidence on the law and the facts? Well, your honor, your recitation there is accurate, but it's also incomplete because it does not include his original statement, which was significant. Some would say radioactive. And when he made that original statement, and what juror 8's response to that statement was, which was asking for the court's attention, that's all additional information. And if you look at the hearing on the new trial motion, the defendant's lawyer acknowledged that it was reasonable for juror 8 to have concluded that juror 13 had not decided the case on the basis of the evidence and the law. Um, counsel, can you tell me exactly what is the radioactive statement that you're referring to? Well, your honor, that wasn't my terminology. I understand, but I just, I just want to be, I want to clarify it before I ask my question. Okay. It was a rigid, his original statement, which we've heard a few different variations of it, but it was essentially that the Holy Spirit told me that Corrine Brown is not guilty of all counts. Okay. I thank you for clarifying that. Well, let me ask you a question because many denominations, including Catholics, believe in, for example, the seven gifts of the Holy Spirit that you receive upon confirmation. And one of those is the gift of counsel, which is praying to the Holy Spirit to help you make decisions, wise decisions. And it could be in minor things where it can be in major decisions. So what, I guess the issue I have is you keep talking about the fact that it's a credibility determination, but the trial court judge here, really what he did was make a per se rule, which judge Newsom was referring to saying that you can pray, but if you get a response, then that's an external influence. How is that not a legal determination that the trial court judge made a per se rule saying, if I pray, let's say I'm a juror and I do the rosary and I'm praying silently in the jury room for guidance. And I believe that I received guidance from Mary as to what I should, what decision I should do, how I should vote. Is that an external influence that would disqualify me from being a juror? Your honor, I respectfully disagree that the court made a per se rule that a juror may not receive guidance. The court never said that. And I think I think counsel that would be incorrect because the judge specifically said this juror is being excused because the court is finding no substantial possibility that he is able to base his decision only on the evidence and the law and the court gave it to him. And he is using external forces to bring to bear on his decision-making in a way that's inconsistent with his jury service and oath. And then it says where the juror is actually saying that the outside force that is a higher being a Holy spirit told him that Mary, that Mrs. Brown was not guilty on those charges. And I think that's just an expression. That's a bridge too far. Well, a lot of people believe in asking and seeking guidance from the Holy spirit. I, I a hundred percent agree with that, your honor. And, but I think you still have to look at what the district court did in context. He's, he was responding to juror 13 statement at the outset of deliberations before he had begun deliberation with the other jurors. And so regardless of where that information comes from, I mean, jurors, juries, excuse me, pray all the time. There's while we're in this virtual courtroom, there's probably a real courtroom somewhere where jurors are deliberating based on their prayers and it happens every day. And there's not a problem with that. And as the judge said, if he, if, if this had been presented in a different way, if this juror hadn't received a, a complete answer to all 22 counts before deliberations began, we probably wouldn't even have heard from juror number eight. That's the ordinary judge pressure. So I want to, I want to ask a question about what you just said, which is the timing of this. Would it be suspect in your view, if a juror said at the beginning of deliberations, I've sat through trial and I think Corrine Brown is not guilty. Is that suspect because it happens at the beginning of deliberations? No, your honor. I'm sure then one makes this, this statement suspect because it happened at the beginning of deliberations because a few different things. One, he, he pronounced it in a way that was independent of the evidence, at least the way he presented it independent of the evidence that he's heard. No, I mean, just to be clear, that doesn't have anything to do with the timing of the statement. Right. I mean, that's, that's an issue unrelated to the timing of the statement. Well, no, I'm not saying there's a problem with someone presenting a view. I'm saying if you do it at the beginning and it is a definitive statement and it's a statement that covers all 22 counts against someone in a pretty complicated white collar case, even though in the first charge at that time. And if that statement results in the other jurors being concerned that he's not deliberating and leads juror number eight to bring a letter to the court that says we've asked him to decide the case on the basis of the evidence and the law of the U.S. courts. Is there any reason to believe that he was not deliberating though? And I guess we're treating this case as if this was a hung jury and the jury was, was, was not able to deliberate that they had split and they were not capable of continuing. But this jury had deliberated for 16 hours at the time that this juror, I guess it was 13 raised this issue and that juror and the other juror were saying that they were continuing to deliberate. So I guess, I guess my concern about this and this is just a practical concern unrelated to the religious aspect is that this juror seems to have been taken off the jury for something he said 16. I mean, I guess it was 48 hours before the issue even arose. I mean, for all we know, this juror was voting guilty at this point. I guess that, that, that's my concern. What do you think about that? Just take the religious aspect aside. Okay. Okay. Talk about the time. Thank you, your honor. Well, let me, let me just clarify one thing and doesn't really change your point, but I just want to make it clear that this was at the end of the second day of deliberations and the jury deliberated after lunch on the first day. So it wasn't 16 hours, but it was a significant period of time, which I understand it's your point here. And so you so what you look at, I would look at there is one, the content of to the court, which says that we have asked the juror to decide this on the base of the evidence and the law of the U S court, which that suggest, I would say strongly that the jurors at least view that he was not doing it at that point and where he was voting at that point in time. I don't know, but we do know also after his initial statement, your honor, three hours or so his initial statement, I trust the Holy spirit. So that, that at least as an indication that his pre-deliberation view, uh, or his pre-deliberation pronouncement still continued. Mr. Rhodes, it seems to me going back to the standard that you focus on all the aspects of the record that you'd think were problematic to the exclusion of the others. Is it because from your perspective, we're, we're obliged to view the evidence in the light, most favorable to the removal of the juror? No, your honor, not at all, but I'm pointing, I do think you should be looking at it in the light in which the district court made its findings. And I think if we're looking at what juror 13 said in response to the district court's questioning, where there's no question, some of that is supports the idea that he was deliberating and he was following the court story. There's no question about that, but in order to parse those words and figure out what exactly he meant, I think at that point, the deference belongs to the district court's findings because he was, does anyone else have any questions? I want to make sure I have one follow-up question. Okay. So this is actually related to what the chief just asked you. And it's related to the question that I asked you earlier, Mr. Rhodes, you seem to be, and indeed you cite in your brief, many cases dealing with a sufficiency review, because you, you relate that to the beyond a reasonable doubt standard for a verdict. And the theory seems to be that as long as there's some evidence, that which you cited here, that supports it, that we are obliged to, to affirm. But as I review, and this is where my question is, that's, that's not the case for us. We need to weigh the evidence ourselves, not to see if there's some on one side or the other, but whether we looking at that same evidence have a definite and firm conviction of a mistake of the finding that was made by the court. And under that review, is there not a lot of evidence on the other side of the scale, even if there could be a reasonable construction in favor of the, of the district finding? There is evidence on the other side. That's true, Your Honor. But you also have to take into account the district. I don't think you can conduct a clear error review like that without taking into account the district court's findings here, where you're talking about the testimony that somebody had provided. And that's going back to what Judge Wilson was saying before, where you have a court who has, has listened to him and seen what he said, and is, is looking at that in comparison to what he initially said and what Juror 8 had said. And so you're right, it's not exactly the same. It's not, at least as this court currently views the standard, and of course, you're on bonk, that could change. But it's not exactly the same. But I also wanted to make it clear that the fact that the district court has to make its finding beyond a reasonable doubt doesn't open the door for a reviewing court to revisit, shall we say, its fact findings across the board. Okay. You want to just take a couple, 30 seconds to wrap it up? Okay. Thank you, Your Honor. Thank you, Mr. Clement. Thank you, Judge Wilson. Thank you, Mr. Clement. I'm going to close carefully, listen to the witnesses, Juror 8 and Juror 13, and made findings about whether Juror 13 was able to follow the law and the evidence, and whether he'd been deciding the case on the basis of that. The district court did not clearly err, didn't abuse its discretion in removing Juror 13, and this court should affirm the district court. Thank you. Okay, Mr. Clement, before you begin, given that you only have five minutes for rebuttal, and I would ask the courtroom deputy to fix the clock to show that five minutes. Thank you. I don't think it's practical to call on every judge, so every judge, try to listen out for each other. If somebody has a question, just ask, but I'm going to just let you start, and we'll try to stick to as much as we can to the five minutes, but allow a little more free-form questioning. Thank you, Your Honor. I just have a few points I'd like to make in rebuttal. The first is, I want to speak to the point of whether what you're looking at here is really a legal error or a factual finding, and I'm convinced that this is a legal error, that the district court judge found a particular statement to be legally disqualified. Mr. Clement, can I interrupt you, because that's the sort of area I wanted to press with you a minute. In a normal setting, we've said that one piece of evidence can be found to be more probative than 10 other pieces of evidence going the other way, and we've done that in sufficiency cases, and we've done that in clear error cases, so to go back to Judge Newsom's point from the beginning, why couldn't on clear error review, the district court put more emphasis and weight on the so-called radioactive statement than on all the other so-called mitigating evidence that Judge Newsom and Judge Luck laid out? Well, I think he would need to do it in the context of a standard that is exceptionally demanding, which is the no substantial possibility test, and so if you really, I mean, you know, with all due respect, I think the only real credibility to finding the district court judge made was that Juror 13 actually said that the Holy Spirit told him that Ms. Brown was not guilty on all counts. That's the credibility finding, and we can all take that as a given, but then the question is, is that or is that not disqualifying? And just to underscore how clear I think that the district court had a legal error in mind, Mr. Clement, the credibility determination that Judge Corrigan made was that the juror was incapable of following the court's instructions. But with respect, Judge Wilson, only because of the disqualifying statement, and he prefaced his reference to the disqualifying statement by saying, and based on my reading of the case law, in the other cases where religious beliefs have caused a juror to be struck, this statement by the juror is a disqualifying statement. He did it based on his reading of the case law. You don't do that for a credibility finding. Counsel, didn't he also say with respect to his credibility finding, in fact, it may have even been in the same sentence, that he noticed that juror number 13 was hesitating before he answered it first. And if you go back and you look at the record, you can see that the court asks a series of questions that call for a yes or a no, and that is not given. Instead, there are other answers given that appear, that could appear to a reasonable person to be somewhat evasive. Why is that not a factor that the judge was allowed to consider in judging credibility? So two things, Your Honor. First, I think to the extent there was any hesitation on the part of the juror to answer the question that the district court judge asked in a clear and concise matter, you really need to look at that question. And that question was a confusing three-part question that at various points talked about getting religious guidance, which everybody says is okay, and then talked about direction. And with all due respect, I think the question that the district court judge asked is a case study in why this is not a proper inquiry for a secular court, because it was a mess. And I don't think it is a fair reading of this record that the reason that this juror was disqualified is because the judge thought that based on the way he answered questions, that he was unwilling to deliberate. After all, the judge said, I honestly think you believe you can deliberate. But then as Judge Lagoa alluded to, he viewed this statement about the Holy Spirit as if it were the equivalent of getting the answer from a Google search. And with all due respect to Judge Newsom, I don't think this statement is correct. And I don't think we as a society can instruct the jury and get the benefit of telling them to swear, so help me God, so they stay true to their task, and then turn around and try to draw a line between seeking guidance and receiving it, or the particular way that you receive it. And I think that's where the district court got off the rails and committed a fundamental and reversible error. Okay, Mr. Clement, we have your case and we appreciate both of your arguments. We're going to move to our next appeal to hear this morning, and we need to reconstitute the court. So we're going to have a couple of judges join us along with counsel for that case. Thank you. Thank you. Thank you.